FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2016 FEB -9 PM 4: 46

CLERK
S.O. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

EDWARD V. LANG, )
)
    Plaintiff, )
)
v. ) CASE NO. CV414-196
)
BLOOMIN' BRANDS, INC., and )
OUTBACK STEAKHOUSE, )
)
    Defendants. )
)

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment (Doc. 27) to which Plaintiff has filed a response (Doc. 31). For the following reasons, Defendants' motion is **GRANTED**. As a result Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

Plaintiff is an African-American man who was employed as a busser at an Outback Steakhouse ("Outback")[1] in downtown

---

[1] Plaintiff moved to amend his complaint to add as defendants OS Restaurant Services, Inc. d/b/a Outback Steakhouse and OSI Restaurant Partners, LLC d/b/a Outback Steakhouse (Doc. 15), and the Court granted the unopposed motion (Doc. 17). Plaintiff, however, never filed an amended complaint. Nevertheless, this Court will treat the motion as sufficient to amend the Complaint. Defendants objected to this amendment in their Motion for Summary Judgment (Doc. 28 at 1) stating only that "Defendants maintain their argument that OSRS was [Plaintiff's] employer, is the only entity that controlled the terms and conditions of [Plaintiff's] employment, and the only proper

Savannah, Georgia. (Doc. 27, Attach. 18 at 9.) During Plaintiff's employment, the restaurant was managed by Sarah Miller, the Managing Partner; Jeremy Webb and Joshua Curry, both Managers; and David Schultz the Kitchen Manager. (Doc. 27, Attach. 21 at 13, 114.) The restaurant, in addition to several others, was overseen by Eldridge "Ridge" Sink, II. (Doc. 27, Attach. 19 at 39-40.) As part of Sink's responsibilities, he conducted training on Outback policies and procedures, and also addressed serious issues of reported discrimination and harassment. (Id. at 60-61.)

Plaintiff was hired on March 21, 2009 (Doc. 27, Attach. 4) and, at the time of his hire, acknowledged receipt of the Employee Handbook, which contained the Outback Discrimination and Harassment Policy (id. at 2-4). Plaintiff alleges that his initial hiring as a busser was only a temporary position and that he was told by Mr. Shultz that he would be promoted when a higher paying kitchen position became available. (Doc. 27, Attach. 18 at 38.) When the position became available, however,

---

party to this action." (Id.) However, this conclusory statement is insufficient to oppose Plaintiff's amendment. See S.D. Ga. L.R. 7.5 ("Failure to respond within the applicable time period shall indicate there is no opposition to a motion."); see Cont'l Tech. Servs., Inc. v. Rockwell Intern. Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (holding issues waived where party offers only conclusory statement without supporting argument). For ease of reference, all Outback entities will be jointly referred to as "Outback" or "Defendants" throughout this order.

Plaintiff did not file a formal application and that position ultimately went to Brian Lowry, a white male. (Id. at 38-42.)

In October of 2009, Plaintiff sent a complaint[2] to Mr. Sink about racist behavior towards African-Americans in the downtown Savannah Outback. (Doc. 27, Attach. 8.) Generally, the complaint alleged (1) "diabolical blatant anti-Black practice[s] at outback steakhouse downtown Savannah"; (2) a "totally improper statement to [Plaintiff] regarding cleaning [a] table"; (3) that Annie Miller[3] "talk[ed] loud and unprofessionally to [Plaintiff]" concerning cleaning tables; (4) that once Jeremy Webb "confronted [Plaintiff] . . . in an extremy [sic] negative manner pointing to another table as if [Plaintiff] was his slave"; (5) that on one occasion Mr. Webb "became argumentative with [Plaintiff];" (6) Mr. Webb harassed Plaintiff about not performing his work adequately, (7) that the managers were "using outback to implement a clandestine and/or questionable business practice/ethic toward Blacks;" (8) that Plaintiff was not receiving proper pay; and (9) that Plaintiff was not receiving proper tips or wages. (Id.) Upon receipt of the complaint, Mr. Sink contacted Robert Donovan, an in-house employment attorney for Outback. (Doc. 27, Attach. 9 at 2.) Mr.

---

[2] The complaint was styled as an "affidavit" and notarized. (Doc. 27, Attach. 8.)
[3] Sarah Miller's sister and an employee at the Downtown Savannah Outback. (Doc. 27, Attach. 8.)

Donovan directed Mr. Sink to investigate the complaint. (Id.) Mr. Sink spoke with Sarah Miller and Plaintiff as part of his investigation. While Mr. Sink was unable to substantiate Plaintiff's complaints, he did discuss the allegations with Plaintiff. (Id. at 5.) In his discussion, Mr. Sink noted that Plaintiff believed Mr. Webb had improved since his letter. (Id. at 4.) Although Mr. Sink believed that the situation was improving, Plaintiff alleges that, in fact, the situation for African-American employees at Outback deteriorated after his complaint and that Mr. Sink spent very little time with him discussing his complaint. (Doc. 1.)

On January 11, 2010, Plaintiff filed a Request for Assistance with the Equal Employment Opportunity Commission ("EEOC"), simultaneously sending a copy to Defendants. (Doc. 27, Attach. 11.) Plaintiff again alleged that there was a "hostile atmosphere for Blacks" at the restaurant; that Mr. Webb engaged in an argument and became unprofessional with another individual; that Mr. Schultz was assigning African-Americans to multiple jobs, but not their white counterparts; that white employees were allowed to smoke outside while African-American employees were not; that managers allowed white employees to make disparaging remarks about African-American employees; that in a fight between an African-American employee and a white employee only the African-American employee was terminated; and

that a white employee was placed in a position for which the Plaintiff was qualified. (Id.) Plaintiff also claimed that one employee, Phillip Meyer, admitted to telling Plaintiff "Yeah, you earn that paycheck, boy!" and that Jeremy Webb used the term "monkey" in front of him. (Doc. 1 at 40-41; Doc. 27, Attach. 13.) Finally, Plaintiff alleged that Mr. Curry told him to take his "black behind and go clean tables." (Doc. 27, Attach. 11; Doc. 27, Attach. 18 at 26-29.)

This time, Mr. Donovan and Mr. Jolly, another senior Outback executive, took the lead in investigating Plaintiff's allegations. (Id.) They were particularly concerned about the "boy" comment (id.), and were informed that Mr. Webb reviewed the incident with Plaintiff and Mr. Meyer, whom had been verbally reprimanded for the comment (id.). Messrs. Donovan and Jolly also investigated Plaintiff's claim that only the African-American employee had been fired as a result of an altercation between an African-American and white employee. (Doc. 27, Attach. 11.) After reviewing the incident, the white employee was also terminated. (Doc. 27, Attach. 20 at 102.) The investigation also revealed other reports of "racial tension," and some claims of sexual harassment in which Plaintiff was not involved (Id. at 41; Doc. 32, Attach. 1 at 10.)

On January 16, 2010, after Plaintiff filed his complaint with the EEOC, one of Plaintiff's co-workers came forward with

allegations that Plaintiff had made several sexually inappropriate remarks to her. (Doc. 27, Attach. 20 at 77; Doc. 27, Attach. 10.) Like Plaintiff's second complaint, this claim was escalated to Messrs. Donovan and Jolly. (Id.) During the course of the investigation, other female employees came forward stating that Plaintiff had made sexual comments to them. (Doc. 27, Attach. 20 at 193-95.) Plaintiff admits to calling one of the employees "Next Top Model" and "Miss Pretty Feet," and notes that he commented on one employee's lips, although he also states that none of the women complained to him about his comments. (Doc. 27, Attach. 18 at 165-167.) Mr. Sink attempted to contact Plaintiff to discuss the accusations, however, Plaintiff did not respond. (Id. at 170.) Plaintiff's hours were reduced until he agreed to speak with Sink about the allegations. (Doc. 31, Attach. 3.) Ultimately, Plaintiff's employment was terminated on February 16, 2010 as a result of the sexual harassment claims and his failure to communicate with Mr. Sink. (Doc. 27, Attach. 19 at 122.)

After his termination, Plaintiff requested state unemployment compensation. (Doc. 27, Attach. 6.) Defendants responded, as required under Georgia law, stating that Plaintiff had been terminated due to a violation of company policy. (Doc. 27, Attach. 7 at 2.) After Plaintiff's request was denied (Doc. 1 at 49), he successfully appealed and was awarded unemployment

benefits (Doc. 27, Attach 7 at 2). On September 10, 2014,
Plaintiff filed this case under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. §§ 2000e et seq. (Doc. 1.) Plaintiff
alleges that he suffered a hostile work environment, and
Defendants retaliated against him for bringing the complaints by
reducing his work hours and eventually firing him. (Id. at 6.)
Plaintiff alleges further that Defendants failure to rehire him
and opposition to Plaintiff's unemployment benefits constitutes
retaliation. Plaintiff also alleges indirectly that Defendants
failed to promote him on the basis of race and that there was
violence in the work place. (Id.) Defendants, maintain however,
that Plaintiff was terminated as a result of his sexual
harassment of co-workers and that Plaintiff did not suffer from
a hostile work environment or any violence in his workplace.
(Doc. 27.)

## **ANALYSIS**

### I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for
summary judgment, identifying each claim or defense—or the part
of each claim of defense—on which summary judgment is sought."
Such a motion must be granted "if the movant shows that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Id. The "purpose of
summary judgment is to 'pierce the pleadings and to assess the

proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II.    HOSTILE WORK ENVIRONMENT CLAIM

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a hostile work environment claim under Title VII, the Plaintiff must prove the following:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment

> under either a theory of vicarious or of direct
> liability.

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). Disrespectful, unprofessional, and harassing conduct will not suffice to show a hostile work environment unless a link between that conduct and Plaintiff's status in a protected category can be shown. Turner v. Ga. Sec'y of State, 848 F. Supp. 2d 1361, 1381 (M.D. Ga. 2012). An isolated racial comment, without more, does not prove racial motivation for all other conduct. In fact, comments and conduct that do not reference race are generally not considered in a hostile work environment claim. See Reeves v. DSI Sec. Servs., Inc., 395 F. App'x 544, 546 (11th Cir. 2010) ("We do not consider statements or conduct that are unrelated to the [Plaintiff's] race.").

The facts of this case clearly satisfy the first and second elements of the prima facie hostile work environment claim. Plaintiff is African-American and suffered some level of harassment at the hands of his co-workers. However, even if the conduct of Plaintiff's co-workers was motivated by Plaintiff's race, this Court is unable to conclude that Plaintiff experienced harassment that was severe or pervasive. To satisfy this element for a hostile work environment, the harassment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that

the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); see also Miller, 277 F.3d at 1276 (noting that the severity requirement has "both an objective and subjective component"). Courts should consider the totality of the circumstances rather than acts in isolation. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

A court must evaluate four factors when addressing the objective hostility of the conduct: " '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.' " Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1285 n.12 (11th Cir. 2003) (quoting Mendoza, 195 F.3d at 1246). The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (internal citations and quotations omitted); see also Johnson v. Booker T. Washington Serv. Inc., 234 F.3d 501, 509 (11th Cir. 2000).

In this case, Plaintiff has provided evidence of, at most, four racial comments: Mr. Webb's use of the term "monkey" in reference to Plaintiff; a coworker's statement "Yeah, you earn

11

that paycheck Boy;" and Mr. Curry's comment directing Plaintiff to take his "black behind and go clean tables." (Doc. 27, Attach. 11; Doc. 27, Attach. 18 at 26-29.) Plaintiff also alleges that white waitresses would make comments about the dining room "getting dark" when African-American patrons came into the restaurant. (Doc. 27, Attach. 18 at 29.) While this Court acknowledges that these kinds of incidents are inappropriate, it is unable to conclude that these isolated incidents from three different people over the course of approximately eleven months renders the conduct pervasive.[4]

Plaintiff also makes a number of allegations unrelated to his race, including that Mr. Webb in particular would get "aggressive" with him and that Mr. Sink also behaved in an "aggressive manner." (Id. at 28-29.) However, Plaintiff neither provides support for his allegation that these actions were the result of a racial bias nor states that in these "aggressive" altercations any person "use[d] any other terminology specific to [Plaintiff's] race." (Id.) Again, statements unrelated to Plaintiff's race do not impact an analysis of claims based on a hostile work environment. Reeves, 395 F. App'x at 546 (11th Cir. 2010); see also Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301-02 (11th Cir. 2007) ("Title VII does not

---

[4] This conclusion is supported by the fact that the speaker of the "boy" comment apologized to Plaintiff when Plaintiff reported the incident. (Doc. 27, Attach. 21 at 60.)

prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category."). Nevertheless, even if this Court were to include all facially race-neutral conduct that Plaintiff believes occurred as a result of his race, the harassment still does not appear to be particularly frequent. See, e.g., Adams v. Austal, U.S.A., LLC, 754 F.3d 1240, 1254 (11th Cir. 2014) (denying claim for hostile work environment where plaintiff "frequently saw racist graffiti . . . the Confederate flag . . . [and heard] the slur 'ni[**]er,'. . . a few times over several years"). Based on its review of the record, this Court concludes that the evidence produced by Plaintiff at the most indicates that Plaintiff experienced harassment with moderate frequency.

With respect to the second factor, the severity of the harassment complained of by Plaintiff is also insufficient to impose liability on Defendants. The Supreme Court and the Eleventh Circuit have noted that a hostile work environment is only created when the workplace is " 'permeated with discriminatory intimidation, ridicule and insult,' not where there is the 'mere utterance of an . . . epithet.' " Miller, 277 F.3d at 1276-77 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Here, the majority of Plaintiff's allegations

relate to undisclosed "aggression" and intermittent commentary by wait-staff concerning patrons in the restaurant. While these events may be unpleasant, Title VII does not impose a general civility code. See Wynn v. Paragon Sys., Inc., 301 F. Supp. 2d 1343, 1352 (S.D. Ga. 2004) (holding that Title VII is not "a general civility code"). And the Court is hard pressed to impose liability for comments occasionally made by wait staff directed to patrons, rather than directed towards Plaintiff. Instead, "[r]acial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create an atmosphere charged with racial hostility.' " Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)). Even when these charges are coupled with the referenced instances involving racial comments made to Plaintiff about his race, the harassment is still insufficiently severe to support a claim under Title VII. See, e.g., Barrow v. Ga. Pac. Corp., 144 F. App'x 54, 57 (11th Cir. 2005) (finding insufficient severity so as to alter the terms of working environment despite multiple supervisors calling plaintiff "ni[**]er," "boy," and "black boy" on multiple occasions over course of year and threatening to "kick [plaintiff's] black ass").

As to the third factor, the allegedly offensive conduct does not appear physically threatening or particularly humiliating. While Plaintiff complains of "aggression," there is no indication that such conduct was related to Plaintiff's race or that Plaintiff felt physically threatened. Furthermore, Plaintiff notes that except for the incident described in Section IV below—which occurred several years after Plaintiff's termination—he never experienced any violence in the workplace based upon race. (Doc. 27, Attach. 18 at 110.) Consequently, this factor weighs against finding that the harassment was objectively severe.

As to the fourth factor, even if the Court were to conclude that the offensive conduct interfered with Plaintiff's job performance—an allegation Plaintiff has failed to make—the remaining three factors all weigh in favor of finding that the conduct experienced by Plaintiff was not objectively severe enough to find a hostile work environment. The harassing conduct was simply too infrequent; did not permeate the workplace with discriminatory intimidation, ridicule, and insult; and was not physically threatening or humiliating. As a result, Defendants are entitled to summary judgment on this claim.

II.  RETALIATION CLAIMS

Because Plaintiff has proffered only circumstantial evidence of discrimination,[5] he must show that "(1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)). Once a plaintiff makes such a showing, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), comes into play, requiring a defendant to show a non-retaliatory reason for its actions. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). If a defendant does provide evidence of a non-retaliatory reason for its actions, a plaintiff is then required to show that " 'the proffered reason really is a pretext for unlawful discrimination.' " Brooks v. Cty. Comm'n of Jefferson Cty.,

---

[5] " 'Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact at issue without inference or presumption . . . [D]irect evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Rohas v. Florida, 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002) (quoting Schoenfeld v. Babbit, 168 F.3d 1257, 1266 (11th Cir. 1999)). Here, Plaintiff has not provided evidence that Defendants made any racial comments in regards to either the reduction of his hours, his termination, or application for unemployment benefits.

Ala., 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting E.E.O.C. v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002)).

A. Retaliatory Opposition To Unemployment Benefits

Plaintiff first claims that Defendants retaliated against him by opposing his application for unemployment benefits. (Doc. 1.) In Georgia, an employer may challenge the award of unemployment benefits to an employee on the basis that the employee was discharged for failure to obey orders, rules, or instructions, or for failure to discharge the duties for which the employee was employed. O.C.G.A. § 34-8-157(b)(1). An employer that fails to respond to any inquiries by the Georgia Department of Labor may be charged for benefits awarded if the former employee was not entitled to them. O.C.G.A. § 34-8-157(b)(2)(E). As a result, employers are legally required to involve themselves in employee initiated unemployment benefit requests. Id. Here, Defendants responded in opposition when Plaintiff initiated his request for unemployment benefits. "Such opposition was clearly the employer's right and duty and not retaliatory in nature, since Plaintiff initiated the unemployment benefits process and the employer participated as required." Baker v. Summit Unlimited, Inc., 855 F. Supp. 375, 376 (N.D. Ga. 1994), see also Gaddis v. Russell Corp., 242 F. Supp. 2d 1123, 1144-45 (M.D. Ala. 2003) ("Plaintiff cannot

17

sustain a cause of action under Title VII based on Defendant's opposition to her request for unemployment benefits because she has not established that this conduct constitutes unlawful employment action.") As a result, Plaintiff has not made a sufficient showing on prongs two and three of his prima facie case. Plaintiff fails to identify any evidence in the record that Defendants' legally mandated participation in the unemployment benefits review was either related to his engagement in a protected activity or constituted an unlawful employment action.

## B. Retaliatory Reduction In Work Time, Suspension, And Termination

Plaintiff next alleges that Defendants retaliated against him by reducing his work hours and eventually terminating his employment. (Doc. 1.) As an initial matter, Plaintiff has provided this Court with no evidence to show that his hours were reduced when he made his initial claim of discrimination. Plaintiff indicates that he worked roughly 40 hours per time sheet prior to his complaints. (Doc. 27, Attach. 18 at 65.) The record indicates that Plaintiff actually worked more in the weeks following his initial report of discrimination. (Doc. 31, Attach. 4.) However, Plaintiff has noted that the first time that his hours were reduced was January 31, 2010, a few weeks after his second claim of discrimination and roughly two weeks

after the initial charges of sexual harassment were made against Plaintiff. (Doc. 27, Attach. 18 at 154; Doc. 31, Attach. 4.) Furthermore, Plaintiff has alleged that he was unlawfully suspended and terminated as a result of his filing a second complaint of racial discrimination. (Doc. 1.) As a result, the Court concludes that Plaintiff has pled a prima facie case of retaliation by showing that he complained both to his employer and the EEOC about racial discrimination at his workplace and that, slightly thereafter, his hours were reduced and he was terminated.

Defendants, however, have provided evidence that Plaintiff's hours were reduced, he was suspended, and ultimately fired as a result of multiple complaints made against him for sexual harassment. Moreover, while Plaintiff quibbles with whether all of the allegations made against him are accurate, he admits that he did engage in at least some of the activity for which he was terminated. (Doc. 27, Attach. 18 at 70-75.) Even assuming Plaintiff's statements are true, and he did not engage in any sexual harassment, Defendants would still be protected. Where "[a]n employer [. . .] fires an employee under the mistaken but honest impression that the employee violated a work rule," that employer is not liable for any unlawful conduct. Damon v. Fleming Supermarkets of Fla., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).

Because Plaintiff has sufficiently proved his prima facie case and Defendants have proffered a reasonable non-retaliatory basis for the termination, it falls to Plaintiff to show that the non-retaliatory basis is mere pretext. A plaintiff may make such a showing by citing to " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered explanation." Brooks, 446 F.3d at 1163 (quoting Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)). However, this Court is "not in the business of adjudging whether employment decisions are prudent or fair. Instead [its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon, 196 F.3d at 1361 (citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)). Notably, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.' " Brooks, 446 F.3d at 1163 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Plaintiff has failed to carry this burden. Plaintiff admitted that he did indeed make the comments that formed the basis of the sexual harassment allegations, and he signed documents attesting to his knowledge of Outback's sexual harassment policy. (Doc. 27, Attach. 4.) Thus, Plaintiff's claim must fail because he is unable to show that the reason proffered by Defendants for his termination was

false. See, e.g. Chavez v. Credit Nation Auto Sales, LLC, ___ F. App'x ___, 2016 WL 158820, *4 (11th Cir. 2016) (concluding that employer's reason for firing was not pretext when employee was fired for sleeping on the clock and plaintiff admitted this conduct.)

## C. Retaliatory Failure To Rehire

Plaintiff also alleges that Defendants' decision not to rehire him was improper retaliation. However, Plaintiff's claim is barred because he has failed to exhaust his administrative remedies. Failure to rehire is a separate and discrete discriminatory act. See Caetio v. Spirit Coach, LLC, 992 F. Supp. 2d 1199, 1210 (N.D. Ala. 2014)(" '[D]iscrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts.' Termination, failure to promote, denial of transfer, or refusal to hire are readily identifiable examples of such discrete discriminatory acts." (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); Basel v. Sec'y of Def., 507 F. App'x 873, 876 (11th Cir. 2013))). Furthermore, it "is clear that a discrete incident of discriminatory treatment, . . . is 'its own unlawful employment practice for which administrative remedies must be exhausted.' " Haugabrook v. Valdosta City Schs., 2012 WL 1014789, *5 (M.D. Ga. Mar. 22, 2012) (quoting Martinez v.

Potter, 347 F.3d 1208 (10th Cir. 2003) (internal quotations omitted). Plaintiff has not presented his failure to rehire claim to the EEOC and may not present that claim here.

III. FAILURE TO PROMOTE

While not clear from the complaint,[6] it appears that Plaintiff also alleges that Defendants discriminated against him by failing to promote him as initially promised. (Doc. 27, Attach. 18 at 38.) Plaintiff claims that when he was first hired, it was with the understanding that he would be promoted when a higher paying position became available. (Id.) Plaintiff however, failed to submit an application for the position, relying on his previous statements of interest in his initial applications for employment and claims that the advertisement for the position occurred secretly. (Id. at 39.) Defendants hired another individual when a higher paying kitchen position became available. (Id. at 38.)

Plaintiffs seeking to make claims for failure to promote "carry the initial burden under the statute of establishing a prima facie case of racial discrimination." McDonnell Douglas, 411 U.S. at 802. In the failure-to-promote context, a "plaintiff

---

[6] Plaintiff claims that "[t]he acts Lang complained of concerned the termination of his employment, failure to promote, demotion, suspension, retaliation and hostile work environment." (Doc. 31, Attach. 8 at 1.) However, beyond this, Plaintiff has provided no support for his failure to promote claim. However, as explained herein, to whatever extent Plaintiff is making a failure to promote claim it must also fail.

may demonstrate that he is a member of a protected class and that he was qualified and applied for the promotion but was rejected despite his qualifications in favor of an equally or less qualified employee who was not a member of the protected class." Jefferson v. Burger King Corp., 505 F. App'x 830, 833 (11th Cir. 2013) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004)). "In order to make a valid comparison, the plaintiff must show that he and the comparator are similarly situated in all relevant respects" Id. (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997.)

In this case, however, Plaintiff has not established a prima facie case. While Plaintiff alleges that he was not hired for the position because he was black, Plaintiff fails to allege that he was even qualified for the position, and he certainly does not state that he had superior qualifications to the individual whom was eventually hired. As a result, Plaintiff's failure to promote claim must also fail. See Burger King, 505 F. App'x at 835 (upholding grant of summary judgment where Plaintiff "failed to carry his burden of demonstrating that Burger King rejected him for a promotion in favor of another individual who was equally or less qualified").

IV.  VIOLENCE IN THE WORKPLACE

Plaintiff's final claim is for "violence in the work place based upon race." (Doc. 1 at 16.) In his complaint, Plaintiff

23

relies upon the experiences of another individual—Anthony Drew—whom Plaintiff claims suffered physical violence at the hands of Mr. Webb. (Doc. 27, Attach. 18 at 110.) This incident occurred on or around May 26, 2012, several years after Plaintiff was employed at the Outback restaurant in downtown Savannah. (Id. at 57). As an initial matter, to whatever extent Plaintiff is trying to argue that he suffered violence at the hands of Outback employees, the Court can discern no evidence in the record of such activity.

The Court acknowledges that threatening behavior towards individuals may form the basis of a hostile workplace claim. Miller, 277 F.3d at 1275. Unfortunately for Plaintiff, he cannot prove the fourth prong for alleging a discriminatory workplace claim—"that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment," because Plaintiff was not employed by Defendants at the time the event took place. Id. at 1275. Furthermore, allegations of events that Plaintiff did not experience generally do not create evidence of a hostile work environment. See, e.g., Adams, 754 F.3d at 1253-54 (granting summary judgment in favor of employer where employees knew about, but did not personally observe, nooses in bathroom.)

As a result, Plaintiff's claim for violence in the workplace must likewise fail.[7]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**. As a result Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 9th day of February 2016.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] To the extent Plaintiff is alleging that Defendants maintained a pattern or practice of discrimination towards African-American employees, his claim must fail as it was not brought as a class action. Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 969 (11th Cir. 2008) abrogated on other grounds by Lacroix v. W. Dist. of Ky., ___ F. App'x ___, 2015 WL 5673018 (11th Cir. 2015).